**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| RYAN O'DELL, | : | |
| | : | |
| Plaintiff, | : | Case No. 1:23-cv-4676 |
| | : | |
| v. | : | |
| | : | **COMPLAINT FOR VIOLATIONS OF** |
| HOME POINT CAPITAL INC., ANDREW | : | **SECTIONS 14(e), 14(d) AND 20(a) OF** |
| BON SALLE, WILLIE NEWMAN, LAURIE | : | **THE SECURITIES EXCHANGE ACT** |
| GOODMAN, AGHA KHAN, STEPHEN | : | **OF 1934** |
| LEVEY, TIMOTHY MORSE, ERIC | : | |
| ROSENZWEIG, and JOANNA ZABRISKIE, | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendants. | : | |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Home Point Capital Inc. ("Home Point or the "Company") and the members Home Point board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Home Point by affiliates of Mr. Cooper Group Inc. ("Mr. Cooper").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on May 25, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Solicitation

Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Heisman Merger Sub, Inc. ("Merger Sub"), a direct wholly owned subsidiary of Mr. Cooper, will merge with and into Home Point, with Home Point continuing as the surviving corporation and as a wholly owned subsidiary of Mr. Cooper (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into, dated May 10, 2023 (the "Merger Agreement"), each Home Point common share issued and outstanding will be converted into the right to receive $2.33 per share owned (the "Merger Consideration"). In accordance with the Merger Agreement, Purchaser commenced a tender offer to acquire all of Home Point's outstanding common stock and will expire on June 27, 2023 (the "Tender Offer").

3. Defendants have now asked Home Point's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act. Specifically, the Solicitation Statement contains materially incomplete and misleading information concerning, among other things, (i) Home Point's financial projections relied upon by the Company's financial advisor, Houlihan Lokey, Inc. ("Houlihan Lokey"); and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Houlihan Lokey. The failure to adequately disclose such material information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Home Point stockholders need such information in order to tender their shares in support of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the tender offer.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Home Point's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDIHOME POINTON AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because each is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Home Point common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Andrew Bon Salle has served as a member of the Board since January 2021 Chairperson of the Board.

11. Individual Defendant Willie Newman has served as a member of the Board since 2015 and is the President and Chief Executive Officer of the Company.

12. Individual Defendant Laurie Goodman has served as a member of the Board since January 2021.

13. Individual Defendant Agha Khan has served as a member of the Board since 2015.

14. Individual Defendant Stephen Levey has served as a member of the Board since 2015.

15. Individual Defendant Timothy Morse has served as a member of the Board since January 2021.

16. Individual Defendant Eric Rosenzweig has served as a member of the Board since 2015.

17. Individual Defendant Joanna Zabriskie has served as a member of the Board since January 2022.

18. Defendant Home Point is incorporated in Delaware and maintains its principal offices at 2211 Old Earhart Road, Suite 250, Ann Arbor, MI 48105. The Company's common stock trades on the NASDAQ Global Select Market under the symbol "HMPT."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Individual Defendants" or the "Board."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.** <u>**The Proposed Transaction**</u>

21. Home Point, together with its subsidiaries, operates as a residential mortgage originator and service provider. It operates through two segments, Origination and Servicing. The

Origination segment sources loans through direct and wholesale. The Servicing segment offers collecting loan payments, remitting payments to investors, sending monthly statements, managing escrow accounts, servicing delinquent loan work-outs, and managing and disposing of foreclosed properties. The Company was incorporated in 2014 and is headquartered in Ann Arbor, Michigan.

22. On May 10, 2023, the Company and Mr. Cooper jointly announced the Proposed Transaction:

> DALLAS--(BUSINESS WIRE)--Mr. Cooper Group Inc. ("Mr. Cooper") and Home Point Capital Inc. ("Home Point"), announced today the signing of a definitive agreement for Mr. Cooper to acquire all outstanding shares of Home Point for approximately $324 million in cash. As part of the transaction, Mr. Cooper will assume $500 million in outstanding Home Point 5% senior notes which are due in February 2026. The transaction is expected to close in the third quarter of 2023, subject to customary closing conditions including receipt of regulatory approvals. Following the onboarding of Home Point customers and the closing of the transaction, Mr. Cooper will shut down the remaining Home Point operations.
>
> Mr. Cooper's Chairman and CEO Jay Bray commented, "This acquisition is consistent with our strategy of growing our customer base, deploying our capital with a focus on attractive risk-adjusted returns, and maintaining a very strong balance sheet. Home Point has amassed an impressive servicing portfolio, consisting of conventional loans to borrowers with high FICO scores, low coupons, and strong equity cushions. We look forward to welcoming these customers to Mr. Cooper and providing them with a high-quality, personalized, and friction-free experience."
>
> Kurt Johnson, Mr. Cooper's CFO added, "Thanks to our strong operations and technology, we have the capacity to onboard this portfolio, with a focus on ensuring a positive customer experience. The senior notes we're assuming from Home Point serve as a low-cost source of funding and contribute to an attractive rate of return on this transaction."
>
> Wachtell, Lipton, Rosen & Katz and Simpson Thacher & Bartlett LLP acted as legal advisors to Mr. Cooper. Kirkland & Ellis acted as legal advisor to Home Point and Houlihan Lokey acted as financial advisor to Home Point.

\* \* \*

23. It is therefore imperative that Home Point's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

B. **The Materially Incomplete and Misleading Solicitation Statement**

24. On May 26, 2023, Home Point filed the Solicitation Statement with the SEC in connection with the Proposed Transaction. The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

25. The Solicitation Statement fails to provide material information concerning financial projections by Home Point management and relied upon by Houlihan Lokey in its analysis. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Houlihan Lokey with forming a view about the stand-alone valuation of the Company. Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Home Point

6

management provided to the Board and Houlihan Lokey. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

26. For the Company Projections, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Origination & Corporate Revenue Contribution, Servicing Revenue Contribution, Operating Income, and Cash Flows but fails to provide line items used to calculate the metrics ***and/or*** a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

27. The Solicitation Statement also fails to disclose the specific risk adjustments made by Home Point management related to the Company's Projections. *See* Solicitation Statement at 35.

28. When a company discloses non-GAAP financial measures in a Solicitation Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30. Thus, to cure the Solicitation Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Solicitation Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Solicitation Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Houlihan Lokey's Financial Analyses*

31. With respect to Houlihan Lokey's *Selected Companies Analysis*, the Solicitation Statement fails to disclose: (i) the financial metrics for each company selected by Houlihan Lokey for the analysis; (ii) the basis for selecting a reference range of multiples of 0.55x to 0.75x; and (iii) the Company's tangible book value as of March 31, 2023.

32. With respect to Houlihan Lokey's *Selected Transactions Analysis*, the Solicitation Statement fails to disclose: (i) the financial metrics for each transaction selected by Houlihan Lokey for the analysis; (ii) the basis for selecting a reference range of multiples of 0.60x to 0.80x; and (iii) the Company's tangible book value as of March 31, 2023.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

33. With respect to Houlihan Lokey's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 12.0% to 15.0%; (ii) the inputs and assumptions underlying the range of terminal value multiples of 0.60x to 0.80x; and (iii) the Company's tangible book value as of March 31, 2023.

34. In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer, Plaintiff will be unable to make a fully-informed decision regarding whether to tender their shares, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for
Violations of Section 14(e) of the Exchange Act**

35. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

37. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in

order to make the statements made, in light of the circumstances under which they were made, not misleading.

38. The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

39. In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

40. The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

41. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

42. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II
### Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### (Against All Defendants)

43. Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

44. Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

45. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

46. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

47. Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

48. The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of his entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

11

## COUNT III

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

49. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of Home Point within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Home Point, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Home Point, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Home Point, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Solicitation Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

53.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

A.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

  B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

  C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  D. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: June 2, 2023         **MELWANI & CHAN LLP**

                /s *Gloria Kui Melwani*
                Gloria Kui Melwani (GM5661)
                1180 Avenue of the Americas, 8th Floor
                New York, New York 10036
                Tel: (212) 382-4620
                Email: gloria@melwanichan.com

                *Attorneys for Plaintiff*